# EXHIBIT A

# Supreme Court of Pennsylvania

### Court of Common Pleas
### Civil Cover Sheet

ALLEGHENY _____ **County**

| For Prothonotary Use Only: |
| --- |
| Docket No: |
| GD-22- |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S E C T I O N  A**

**Commencement of Action:**
- [X] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

**Lead Plaintiff's Name:**
Chelsea Chambers

**Lead Defendant's Name:**
Greenbrier International, Inc.

**Are money damages requested?** [X] Yes   [ ] No

**Dollar Amount Requested:** (check one)
- [ ] within arbitration limits
- [X] outside arbitration limits

**Is this a *Class Action Suit?*** [ ] Yes   [X] No

**Is this an *MDJ Appeal?*** [ ] Yes   [X] No

**Name of Plaintiff/Appellant's Attorney:** Jon R. Perry, Esq./Rosen & Perry, P.C. 437 Grant Street, Suite 200, Pittsburgh, PA 15219

- [ ] Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**S E C T I O N  B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [X] Product Liability *(does not include mass tort)*
- [ ] Slander/Libel/Defamation
- [ ] Other: _____

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other: _____

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
- _____
- _____
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
- _____
- [ ] Other: _____

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other: _____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other
- _____
- [ ] Zoning Board
- [ ] Other: _____

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other: _____

*Updated 1/1/2011*

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

---

CHELSEA CHAMBERS, an incapacitated person, by and through ANTOINETTE CHAMBERS, the natural and court appointed guardian of the ESTATE and PERSON of CHELSEA CHAMBERS,

      *Plaintiff,*

   vs.

GREENBRIER INTERNATIONAL, INC., t/d/b/a DOLLAR TREE MERCHANDISING,

      *Defendant.*

TO THE WITHIN-NAMED DEFENDANT:

YOU ARE HEREBY NOTIFIED TO FILE A WRITTEN RESPONSE TO THE ENCLOSED COMPLAINT WITHIN TWENTY (20) DAYS FROM SERVICE HEREOF OF A JUDGMENT MAY BE ENTERED AGAINST YOU.

_____
*Attorneys for Plaintiff*

**CIVIL DIVISION**

Case No.: GD-22-_____
Code:

**COMPLAINT IN CIVIL ACTION**

Filed on behalf of PLAINTIFF

Counsel for PLAINTIFF:

JON R. PERRY, ESQUIRE
Pa. I.D. #62451

ROSEN & PERRY, P.C.
Firm #020
The Frick Building, Suite 200
437 Grant Street
Pittsburgh, PA  15219
Telephone:     412-281-4200
Facsimile:     412-281-2997
Email: jperry@caringlawyers.com

## JURY TRIAL DEMANDED

## COMPLAINT IN A CIVIL ACTION

### <u>NOTICE TO DEFEND</u>

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint and for any claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE OR KNOW A LAWYER, OR CANNOT AFFORD ONE, THEN YOU SHOULD GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.  IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE:**

**Lawyer Referral Service**
**Allegheny County Bar Association**
**400 Koppers Building, 3rd Floor**
**436 Seventh Avenue**
**Pittsburgh, PA   15219**
**(412)261-5555**
**LRS@acba.org**
**www.acbalrs.org**

## COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiff, Chelsea Chambers, by and through Antoinette Chambers, the natural and court-appointed guardian of the estate and person of Chelsea Chambers, and by and through her attorneys, Jon R. Perry, Esquire and Rosen & Perry, P.C., averring the following:

1.     Plaintiff, CHELSEA CHAMBERS ("Chelsea"), an incapacitated person, is a resident of Allegheny County, Pennsylvania, where she resides with her mother and natural guardian, Antoinette Chambers ("Ms. Chambers") at 304 Pinewood Square, Pittsburgh, Pennsylvania 15235. Chelsea was declared an incapacitated person by reason of the final decree of the Court of Common Pleas of Allegheny Count, Pennsylvania on May 28, 2021 which decree appointed Antoinette Chambers guardian of the estate and person of Chelsea Chambers.

2.     At all times relevant to the matters set forth in this Complaint, Chelsea was a 19-year-old non-verbal female with a past medical history positive for a chromosomal abnormality and an autism spectrum disorder who suffered from significant developmental delays, including but not limited to mental retardation.

3.     Defendant, GREENBRIER INTERNATIONAL, INC., t/d/b/a DOLLAR TREE MERCHANDISING ("Defendant Dollar Tree"), is a corporation, business association or other entity registered with the Secretary of the Commonwealth of Pennsylvania and is, and was at all times relevant to the matters set forth in this Complaint, regularly conducting business and providing goods and services on a regular basis in the Commonwealth of Pennsylvania.  Upon information and belief, Defendant maintains a principal place of business/corporate offices at 500 Volvo Parkway, Chesapeake, Virginia 23320-1604 and, at all times relevant to the matters set forth in this Complaint, owned, operated, possessed, controlled and maintained numerous retail facilities throughout the Commonwealth of Pennsylvania known as the "Dollar Tree", including, but not

1

limited to, the Dollar Tree facility situated in Penn Hills Shopping Center, 12 Federal Drive, Pittsburgh, Allegheny County, Pennsylvania 15235. Defendant held this facility open to the public and to Ms. Chambers for various retail sales.

4.     At all times relevant to the matters set forth in this Complaint, Defendant Dollar Tree was acting through its agents, servants and/or employees and within the course and scope of their employment.

5.     In or about June of 2020, Ms. Chambers purchased from Defendant Dollar Tree a packet of elastic headbands for Chelsea to place around her head for the purpose of keeping her hair in place. The headbands in question came in one packet of approximately seven elastic fabric bands and labeled "Basic Solutions Narrow Elastic Headwraps" (hereinafter "headbands"). The packaging in which the headbands were contained did not include instructions, warnings and/or sizing information.

6.     Subsequent to Ms. Chambers purchase of the packet of headbands from Defendant Dollar Tree, Chelsea and Ms. Chambers went on a family vacation to North Carolina. While on vacation, Chelsea placed one of the headbands around her head to keep her hair in place. At this time, and at all times relevant to the matters set forth in this Complaint, the headband Chelsea placed around her head was being used and/or worn in the manner prescribed by Defendant and for the foreseeable and intended purpose for which it was designed and manufactured as well as distributed and sold by Defendant.

7.     A few days after returning to Pennsylvania, on or about June 26, 2020, Ms. Chambers noticed that Chelsea appeared agitated and uncomfortable and was holding her head. Upon examining her scalp, Ms. Chambers saw what appeared to be a white creamy substance on her scalp and noticed a strong, unidentified smell emanating from Chelsea's head. Ms. Chambers also felt

what appeared to be an indentation in this area and the presence of a hard object embedded in her scalp.

        8.      Ms. Chambers contacted Chelsea's primary care physician regarding the aforementioned findings and explained to her physician that while on vacation days prior Chelsea had fallen in the shower and may have hit her head. Ms. Chambers was instructed to take Chelsea to an emergency room for evaluation.

        9.      As instructed, on June 26, 2020, Ms. Chambers took Chelsea to the emergency department at UPMC Children's Hospital of Pittsburgh ("CHP"). Following an examination by emergency department physicians, Chelsea was found to have a "hair tie" embedded in her scalp, which was extended around her temple areas bilaterally, as well as the presence of a purulent and foul smell emanating from the area. As a consequence of these findings, Chelsea was immediately started on antibiotics and admitted to CHP.

        10.     Thereafter, surgeons from CHP's pediatric plastic surgery department were consulted. Upon examination, the plastic surgery physicians noted significant edema and occipital pressure ulceration of the scalp proximal to the embedded headband as well as the presence of a malodorous odor and purulence. The embedded headband was removed and the area was debrided and washed out copiously with normal saline.

        11.     Due to the depth of the infection observed on Chelsea's scalp, a CT head scan with contrast was ordered to assess for osteomyelitis. The results of the CT scan revealed the presence of a large scalp collection possibly representing a subgaleal abscess. As a consequence of this finding, Chelsea was started on IV and topical antibiotics to treat the infected area.

        12.     Following a three-day admission at CHP, Chelsea was discharged home on a continued regimen of oral and topical antibiotics. Detailed instructions and training were given to

Ms. Chambers regarding Chelsea's medication administration and how to wash and clean Chelsea's wound and perform proper dressing changes.

13.    Thereafter, Chelsea returned to CHP's plastic surgery department for follow-up evaluations and continued care. During these visits, Chelsea's wound was debrided, cleaned and her dressing changed. The formation of a wide scar was noted and Ms. Chambers was educated on the treatment and care of the scar. Recommendations were made to have the scar examined in approximately one year to assess the need and viability of a scar revision procedure.

14.    To date, Chelsea continues to suffer from pain in and around the area where the headband was embedded. Pustules will often form over the scar which require specific treatment from Ms. Chambers. The wide scar created by the headband did not fully close and because portions of the scar remain open, Chelsea will be required to undergo scar revision surgery.

15.    The sole and proximate cause of the aforementioned occurrence and the injuries and damages suffered by Plaintiff Chelsea Chambers was the negligence, recklessness, and carelessness of Defendant.

## COUNT I

**CHELSEA CHAMBERS, an incapacitated person, by and through
ANTOINETTE CHAMBERS, the natural and court-appointed guardian of the
ESTATE and PERSON of CHELSEA CHAMBERS, Plaintiff, vs. GREENBRIER
INTERNATIONAL, INC., t/d/b/a DOLLAR TREE MERCHANDISING, Defendant**

### (Negligence)

16.    Plaintiff incorporates by reference and makes part of this Count all of the allegations contained in the preceding paragraphs of this Complaint as set forth above.

17.    Defendant Dollar Tree was negligent and careless in some or all of the following particulars:

4

(a)     In distributing and/or selling a defective headband;

(b)     In distributing and/or selling headbands to be placed around the user/consumer's head when Defendant knew or should have known that the type and/or quality of the elastic used in the design and manufacture of the product was of a degree of stiffness that was improper and unsafe as it required an amount of force to properly and safely expand and stretch the headband onto the user/consumer's head far beyond that required for the product's intended purpose;

(c)     In distributing and/or selling headbands to be placed around the user/consumer's head when Defendant knew or should have known that the width of the headband coupled with the type and/or quality of the elastic used in the design and manufacture of the product had the potential to cause an unsafe contact force/pressure under the headband for the user/consumer depending on the size of the head of the user/consumer;

(d)     In distributing and/or selling headbands to be placed around the user/consumer's head when Defendant knew or should have known that size and/or diameter of the headband coupled with the type and/or quality of the elastic used in the design and manufacture of the product had the potential to cause an unsafe contact force/pressure under the headband for the user/consumer depending on the size of the head of the user/consumer;

(e)     In distributing and/or selling headbands to be placed around the user/consumer's head when Defendant knew or should have known that the product was of a size and/or diameter that was improper or unsafe for the user/consumer depending on the size of the head of the user/consumer;

(f)     In distributing and/or selling headbands with improper, inadequate and/or misleading instructions and/or warnings;

(g)     In failing to warn of the risks and hazards of using headbands with the defects identified and described in the preceding subparagraphs;

(h)     In distributing and/or selling headbands that failed to warn the user/consumer of the potential for the risks and dangers detailed in the preceding subparagraphs;

(i)     In distributing and/or selling headbands that failed to include sizing information on the product's packaging, including information regarding the risks and dangers to the user/consumer should the headband be of a size inappropriate for use by the user/consumer;

(j)     In distributing and/or selling headbands that failed to include sizing information on the product's packaging, including information regarding the

risks and dangers to the user/consumer should the headband be of a size inappropriate for use by the user/consumer;

(k)     In distributing and/or selling headbands that failed to include instructions, information and/or warnings regarding the length of time the product should be used by the user/consumer;

(l)     In distributing and/or selling headbands that failed to include information and/or warnings regarding the risks and dangers of wearing the headband for a prolonged length of time in light of the products defects as identified and described in the preceding subparagraphs;

(m)     In distributing and/or selling headbands that came in only one size when Defendant knew or should have known that a range of sizes was required as the intended users/consumers of the product would have varying head diameters and would require a range of sizes for a proper and safe fit;

(n)     In failing to properly inspect the headbands at issue here;

(n)     In distributing and/or selling headbands which created a hazardous, dangerous and unreasonable risk of harm; and

(o)     In failing to act as a reasonably prudent distributor of hair products.

18.     At the time of the aforementioned occurrences, the product at issue in this lawsuit and known as "Basic Solutions Narrow Elastic Headwraps" was distributed and/or sold by Defendant in the Commonwealth of Pennsylvania.

19.     As a result of Defendant's negligence, Chelsea Chambers suffered the injuries identified and detailed herein and was forced to endure great pain, suffering and inconvenience, and may endure the same in the future.  Chelsea was forced to submit to medical, medicinal and therapeutic treatment and will be forced to submit to the same in the future.

20.     As a further result of the conduct of the Defendant, Chelsea has been forced to expend large sums of money for doctors, hospitals, x-rays, medicines and other items necessary for her proper care and treatment, and she may be forced to expend additional sums for the like items in the future.

WHEREFORE, Plaintiff claims damages against Defendant in a sum in excess of the arbitrational limits of this Court and demands a trial by jury.

## COUNT II

**CHELSEA CHAMBERS, an incapacitated person, by and through ANTOINETTE CHAMBERS, the natural and court-appointed guardian of the ESTATE and PERSON of CHELSEA CHAMBERS, Plaintiff, vs. GREENBRIER INTERNATIONAL, INC., t/d/b/a DOLLAR TREE MERCHANDISING, Defendant**

### (Strict Liability for Defective Product)

21.     Plaintiff incorporates by reference and makes part of this Count all of the allegations contained in the preceding paragraphs of this Complaint as set forth above.

22.     The headbands, as identified and described above, were distributed, and/or sold by Defendant in a defective condition unreasonably dangerous to Plaintiff.  The defective product reached Plaintiff without substantial change in the condition in which it had been designed, manufactured, assembled and then distributed and/or sold by Defendant.

23.     Plaintiff was in the class of persons that Defendant knew or reasonably should have foreseen as being subject to harm caused by any defects in the design, manufacture, assembly, distribution and/or sale of the defective headbands.

24.     The malfunction of the headband as detailed and describe above was caused by defects in the design, manufacture and/or assembly of the headbands and, by reason of said defects, the headband was an unreasonably dangerous product at the time Defendant distributed and/or sold the product to Plaintiff.

25.     As a result of Defendant's distributing and/or selling the headbands in a defective condition, as identified and described above, Plaintiff suffered the injuries and damages described in the preceding paragraphs.

7

WHEREFORE, Plaintiff claims damages against Defendant in a sum in excess of the arbitrational limits of this Court and demands a trial by jury.

## COUNT III

**CHELSEA CHAMBERS, an incapacitated person, by and through ANTOINETTE CHAMBERS, the natural and court-appointed guardian of the ESTATE and PERSON of CHELSEA CHAMBERS, Plaintiff, vs. GREENBRIER INTERNATIONAL, INC., t/d/b/a DOLLAR TREE MERCHANDISING, Defendant**

### (Breach of Warranty)

26.     Plaintiff incorporates by reference and makes part of this Count all of the allegations contained in the preceding paragraphs of this Complaint as set forth above.

27.     Defendant impliedly warranted to the public and Plaintiff that the headbands Defendant distributed and sold to Plaintiff were sold in merchantable condition and were reasonably fit and suitable for the ordinary purposes for which the headbands were to be used and that said product conformed to the standards imposed by law and were reasonably safe. Plaintiff relied upon the skill and judgment and implied warrantees of Defendant that the headbands were of merchantable quality and safe and fit for the use for which they were intended.

28.     The headbands were unsafe for their intended use and were not of merchantable quality, as warranted by Defendant, in that it had an unacceptably high risk of malfunctioning as described and detailed above when put to its intended use. The headbands were not accompanied by warnings of these dangerous propensities, which were either known to Defendant or reasonably and scientifically knowable to Defendant at the time the headbands were sold to Plaintiff.

29.     At the time Defendant distributed and sold the headbands to Plaintiff, Defendant knew or had reason to know of the particular purpose for which the headbands were used and that Plaintiff as the buyer was relying on the skill and judgment of Defendant to distribute and sell

8

suitable goods, and, in particular, to supply headbands that could be safely an d properly used by Plaintiff.

30.     As a result of Defendant's distributing and/or selling the headbands in a defective condition, as identified and described above, Plaintiff suffered the injuries and damages described in the preceding paragraphs.

WHEREFORE, Plaintiff claims damages against Defendant in a sum in excess of the arbitrational limits of this Court and demands a trial by jury.

**JURY TRIAL DEMANDED**

Respectfully submitted,

ROSEN & PERRY, P.C.

By:_____
     Jon R. Perry, Esquire
     *Attorneys for Plaintiff*

9

## VERIFICATION

I, Antoinette Chambers, have read the foregoing COMPLAINT IN CIVIL ACTION. The averments and/or denials contained therein are, insofar as they are derived from my own knowledge, true and correct to the best of my knowledge, information and belief, and insofar as they are derived from others, such facts are believed to be true and correct.

This statement and verification is made subject to the penalties of 19 Pa. C. S. §4904 relating to unsworn falsification to authorities, which statute provides that false statements are subject to criminal penalties.

_1-19-2022_
Date

Antoinette Chambers, the natural and court appointed guardian of the estate and person of Chelsea Chambers

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania:  Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

ROSEN & PERRY, P.C.

By:_____

Jon R. Perry, Esquire
Pa. I.D. #62451
*Attorneys for Plaintiff*